**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

BROOKDALE SENIOR LIVING COMMUNITIES, INC.,

    Defendant.

**COMPLAINT AND JURY TRIAL DEMAND**

NATURE OF THE ACTION

This is an action under Titles I and V of the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Bernadine I. Adams. As alleged with greater particularity below, Plaintiff, the U.S. Equal Employment Opportunity Commission ("Plaintiff," "EEOC," or "the Commission"), asserts two claims against Defendant Brookdale Senior Living Communities, Inc. ("Brookdale"). The first claim alleges Brookdale refused to provide any reasonable accommodation of Ms. Adam's disability. The second claim contends Brookdale discharged Ms. Adams in retaliation for requesting reasonable accommodations and/or for filing a charge of discrimination with the EEOC.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Titles I and V of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Brookdale, a Delaware corporation in good standing with headquarters located at 111 Westwood Place, Suite 400, Brentwood, Tennessee 37027, has continuously been doing business in the State of Colorado, and has continuously had at least fifteen employees.

5. At all relevant times, Brookdale has continuously been an employer in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Section 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

6. At all relevant times, Brookdale has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF FACTS

7. More than thirty days prior to the institution of this lawsuit, Ms. Adams filed charges with the Commission alleging violations of the ADA by Brookdale. All conditions precedent to the institution of this lawsuit have been fulfilled.

8. The Commission investigated Ms. Adams' charges of discrimination.

9. Based on evidence adduced during its investigation, the Commission issued a determination finding reasonable cause to believe Brookdale had engaged in certain unlawful employment practices identified in the determination.

10. The Commission's determination letter included an invitation for Brookdale to join with the Commission in an attempt to eliminate the alleged unlawful employment practices through informal methods of conciliation.

11. As part of the conciliation process, the Commission provided Brookdale a proposal detailing the kinds of relief the Commission felt was necessary to eliminate the alleged unlawful employment practices.

12. Prior to institution of this lawsuit, the Commission's representatives attempted to eliminate the unlawful employment practices alleged below and to effect voluntary compliance with the ADA through informal methods of conciliation, conference, and persuasion within the meaning of Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(b) and (f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(b) and (f)(1) and (3).

13. Since at least January 25, 2012, if not earlier, and continuing until today, Brookdale has engaged in unlawful employment practices in Colorado in violation of Section 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. § 12112(a) and (b)(5)(A), and Section 503(a) of Title V of the ADA, 42 U.S.C. § 12203(a).

14. On or about October 5, 2009, Ms. Adams, then a resident of the City of Aurora, Arapahoe County, State of Colorado, was hired by Brookdale as a full-time Licensed Practical Nurse at its Heritage Club Mountain View facility ("Heritage Club"), located at 8101 East Mississippi Avenue, Denver, Colorado 80247.

15. On or about April 5, 2010, Brookdale promoted Ms. Adams to the position of Health and Wellness Director at its Heritage Club facility and increased Ms. Adams' pay.

16. In June 2010, Ms. Adams received an annual performance review, rating her as "exceptional."

17. Upon information and belief, in June 2011, Ms. Adams received an annual performance review, rating her as "exceptional."

18. In July 2011:

   a. Ms. Adams was diagnosed with fibromyalgia; and

   b. Ms. Adams provided Laura Ritter, Brookdale's Human Resources Manager ("Human Resources Manager Ritter"), with a letter from Ms. Adams' doctor regarding Ms. Adams' diagnosis.

19. Ms. Adams' fibromyalgia substantially limits several of her major life activities, including walking, sitting, sleeping, her ability to care for herself, thinking, and concentrating.

20. In late July or early August 2011, Ms. Adams took a few days off of work due to her

fibromyalgia.

21. On or about December 21, 2011, Ms. Adams went on Family Medical Leave Act ("FMLA") leave because of her fibromyalgia.

22. On or about January 23, 2012, Ms. Adams returned to work without restrictions but with intermittent FMLA leave orders, if needed, from January 23, 2012, through July 20, 2012.

23. On or about January 25, 2012:

   a. Ms. Adams' fibromyalgia flared up;

   b. Ms. Adams' doctor recommended that she work half-time from January 26, 2012, through February 3, 2012;

   c. Ms. Adams met with Susan Reimer, Brookdale's Executive Director ("Executive Director Reimer"), and Human Resources Manager Ritter;

   d. Brookdale's manager(s) asked Ms. Adams to continue working from home for the second half of her shift after working the first half of her shift; and

   e. Ms. Adams, sensing that her job was in potential jeopardy, reluctantly agreed to work in violation of her doctor's orders by working from home after working the half-time shift and also taking work-related telephone calls at home during her intermittent FMLA leave.

24. On or about January 27, 2012:

   a. Ms. Adams was called into a meeting with Executive Director Reimer and Human Resources Manager Ritter;

   b. Brookdale's manager(s) advised Ms. Adams that Brookdale needed clarification from Ms. Adams' doctor regarding her restrictions;

    c. Brookdale's managers asked Ms. Adams to sign a medical release authorizing them to speak directly with her physician regarding her fibromyalgia, and Ms. Adams complied with that request;

    d. Brookdale's manager(s) informed Ms. Adams she would not be working from home until such clarification was received; and

    e. In response to the aforementioned request by Brookdale, Ms. Adams' doctor provided Brookdale with a Return to Work/School Treatment Verification ("Verification"):

        i. Stating Ms. Adams would benefit from having the afternoon off during January 26, 2012, through February 3, 2012, and may do "on-call" work from home after 5 p.m. during that same time frame;

        ii. Asking Brookdale to allow Ms. Adams to have an ergonomic chair with adequate back (lumbar support)/neck/arm/leg support at work; and

        iii. Requesting Brookdale to provide Ms. Adams a workplace lighting adjustment to reduce fluorescent lighting near her work area.

25. On or about January 30, 2012:

    a. After receiving the Verification from Ms. Adams' doctor, Executive Director Reimer consulted with others within Brookdale, including Human Resource Manager Ritter and Jack Leebron, Brookdale's Vice President, Legal Services ("Vice President Leebron"), regarding placing Ms. Adams on "full FMLA until she is fully released," and "meet[ing] with [Ms. Adams] this am and send[ing] her home with this information;"

    b.  Subsequently, Brookdale required Ms. Adams to attend a meeting with Executive Director Reimer and Human Resources Manager Ritter;

    c.  Brookdale's manager(s) advised Ms. Adams that Brookdale had received the clarification from Ms. Adams' doctor;

    d.  Brookdale's manager(s) advised Ms. Adams that she could no longer work at Brookdale without being totally cleared from restrictions and accommodations, or words to that effect;

    e.  Brookdale's manager(s) advised Ms. Adams that the items ordered by her doctor were unreasonable and were causing an undue hardship on other staff, or words to that effect;

    f.  Brookdale's manager(s) advised Ms. Adams that she could not return to work until she was able to work full-time with no restrictions or accommodations;

    g.  Brookdale's manager(s) instructed Ms. Adams to go home; and

    h.  Brookdale placed Ms. Adams on leave with an anticipated return date of February 9, 2012.

26. On this occasion, Brookdale did not discuss with, or propose to, Ms. Adams any other potential, alternative reasonable accommodations.

27. On or about February 2, 2012, Ms. Adams filed Charge No. 541-2012-01205 with the EEOC, alleging Brookdale violated the ADA and retaliated against her when it failed to reasonably accommodate her disability, failed to engage in the interactive process to determine whether her condition could be reasonably accommodated, and would not allow her to return to work unless she was released to return to work full-time and without restrictions.

7

28. On or about February 12, 2012, Ms. Adams e-mailed to Human Resources Manager Ritter a link to a website describing fibromyalgia, and stated, "thought it might be informative for you to understand a bit of what I'm going through on a daily basis."

29. On or about February 13, 2012, Ms. Adams advised Executive Director Reimer and Human Resources Manager Ritter after an appointment with her doctor that she would be off work for an estimated one month, whereupon Ms. Adams' anticipated return date was updated to March 19, 2012.

30. On or about March 8, 2012, Ms. Adams updated Executive Director Reimer and Human Resources Manager Ritter regarding her condition and that her expected return date was March 26, 2012.

31. On or about March 21, 2012:

   a. Ms. Adams advised Executive Director Reimer and Human Resources Manager Ritter that following an appointment with her doctor, it was determined that Ms. Adams was making progress with her disability and her recovery;

   b. Ms. Adams advised Executive Director Reimer and Human Resources Manager Ritter that she was "still not able to return to work without restrictions or accommodations as you requested in our meeting on January 30, 2012;"

   c. Ms. Adams provided Executive Director Reimer and Human Resources Manager Ritter with restrictions from her doctor, which included "unable to lift > 20 lbs.," "unable to stand or sit for prolonged periods of time," and that Ms. Adams had "persistent fatigue and weakness requiring at least 1 nap during the day;" and

   d. Ms. Adams requested the following accommodations related to her disability:

8

      i. "as my doctor previously requested[,] an ergonomic chair to support my legs, arms, neck and back, and the lighting in my office to be adjusted;

      ii. "a regular fixed work schedule of 8:30a.m.-17:00 p.m.;" and

      iii. she be "[a]llowed to park close to an entrance to the facility;"

  e. Executive Director Reimer responded to Ms. Adams the same day, stating, "[b]ased upon these restrictions, you are not able to perform the essential functions of your job;"

  f. Executive Director Reimer responded to Ms. Adams the same day, stating, "[b]ased upon this, we will need to extend your leave but we need to know in writing from your physician what is the duration of time for your restrictions;"

  g. Executive Director Reimer's response did not set a deadline by which Ms. Adams was to provide Brookdale with her doctor's written statement of the anticipated duration of her restrictions;

  h. Ms. Adams replied to Executive Director Reimer the same day, stating, "I will contact my doctor and as soon as I receive the letter regarding duration I will get it to you;"

  i. Executive Director Reimer responded to Ms. Adams that, "we will speak to you once we receive it."

32. On this occasion, Brookdale did not discuss with, or propose to, Ms. Adams any other potential, alternative reasonable accommodations.

33. Seven days later, on or about March 28, 2012, Brookdale, through Executive Director Reimer, discharged Ms. Adams by letter.

34. The termination letter states Ms. Adams was being terminated "because you have failed to engage in the interactive process within reasonable terms."

35. Brookdale discharged Ms. Adams before she was able to obtain a written statement from her doctor regarding the anticipated duration of her restrictions; Ms. Adams had an appointment with her doctor scheduled for April 5, 2012.

36. On or about April 13, 2012, Ms. Adams filed Charge No. 541-2012-01561 with the EEOC, alleging a violation of the ADA and retaliation when after she filed her first charge on or about February 2, 2012, Brookdale retaliated against her by refusing to allow her to return to work until she was able to work without restrictions or accommodations, and terminating her employment on March 28, 2012.

**FIRST CLAIM FOR RELIEF**
(Discrimination Because of Disability - Failure to Accommodate)
[Section 102(a) and (b)(5)(A) of Title I of the ADA, as amended,
42 U.S.C. § 12112(a) and (b)(5)(A)]

37. The EEOC hereby incorporates and re-alleges each and every foregoing paragraph with the same force and effect as if fully set forth herein.

38. Ms. Adams is a disabled person within the meaning of the ADA.

39. Ms. Adams suffers from fibromyalgia.

40. Ms. Adams' fibromyalgia substantially limits several of her major life activities, including walking, sitting, sleeping, her ability to care for herself, thinking, and concentrating.

41. Ms. Adams is able to perform the essential job functions of Health and Wellness Director - the last position she held and performed successfully, as reflected by her last performance evaluation from Brookdale - at Brookdale's Heritage Club facility, with or without reasonable accommodations.

42. Since at least January 25, 2012, if not earlier, and continuing until today, Brookdale discriminated, and continues to discriminate, against Ms. Adams, its former employee, in Colorado, because of her disability – fibromyalgia – by not making reasonable accommodations to the known physical limitations of Ms. Adams, an otherwise qualified individual with a disability, in violation of Section 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. § 12112(a) and (b)(5)(A).

43. The effect of the practices complained of in the paragraphs above has been to deprive Ms. Adams of equal employment opportunities and otherwise adversely affect her status as an employee because of Brookdale's denial of her multiple and repeated requests for reasonable accommodations based on her disability.

44. The effect of the practices complained of in the paragraphs above has been to deprive Ms. Adams of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

45. The unlawful employment practices complained of in the paragraphs above were and are intentional.

46. The unlawful employment practices complained of in the paragraphs above were and are done with malice or with reckless indifference to the federally protected rights of Ms. Adams.

**SECOND CLAIM FOR RELIEF**
(Retaliation)
[Section 503(a) of Title V of the ADA, as amended, 42 U.S.C. § 12203(a)]

47. EEOC hereby incorporates and re-alleges each and every foregoing paragraph with the same force and effect as if fully set forth herein.

48. Ms. Adams engaged in the following activity protected under the ADA:

   a. Since at least January 27, 2012, if not earlier, she made requests for reasonable accommodation of her disability; and

   b. On or about February 2, 2012, she filed Charge No., 541-2012-01205 with the EEOC.

49. Since at least January 30, 2012, if not earlier, and continuing until today, Brookdale has engaged in unlawful employment practices in Colorado in violation of Section 503(a) of Title V of the ADA, 42 U.S.C. § 12203(a):

   a. By not allowing Ms. Adams to return to work until she could return full-time with no restrictions or need for accommodations; and/or

   b. By discharging Ms. Adams from her employment on or about March 28, 2012.

50. A causal connection exists between Ms. Adams' protected activity and Brookdale's materially adverse actions; *i.e.*, Brookdale discharged Ms. Adams because she requested or required reasonable accommodation and/or because she filed Charge No. 541-2012-01205 with the EEOC.

51. The unlawful employment practices complained of in the paragraphs above were and are intentional.

52. The unlawful employment practices complained of in the paragraphs above were and are done with malice or with reckless indifference to the federally protected rights of Ms. Adams.

### PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

  A. Grant a permanent injunction enjoining Brookdale, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from:

   (1) Failing and/or refusing to engage in the interactive process with Ms. Adams;

   (2) Failing and/or refusing to engage in the interactive process with other applicants or employees once they request reasonable accommodation of their disabilities;

   (3) Failing and/or refusing to make reasonable accommodations to the known physical limitations of Ms. Adams;

   (4) Failing and/or refusing to make reasonable accommodations to the known physical or mental limitations of other otherwise qualified individuals with disabilities who are applicants or employees, unless Brookdale can demonstrate that the accommodations would impose undue hardships on the operation of its business;

   (5) Engaging in unlawful retaliatory practices against Ms. Adams for her conduct protected under the ADA; and

   (6) Engaging in unlawful retaliatory practices against other individual for his or her conduct protected under the ADA;

  B. Order Brookdale to institute and carry out policies, practices and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices;

  C. Order Brookdale to make whole Ms. Adams by providing appropriate back pay and benefits with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not

limited to reinstatement and engaging in the interactive process with Ms. Adams in good faith or, alternatively, front pay in lieu of reinstatement;

    D.    Order Brookdale to make whole Ms. Adams by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including but not limited to relocation expenses, job search expenses, lost life insurance policies, lost increase in the value of Ms. Adams' home, and out-of-pocket medical expenses not covered by Brookdale's employee benefit plan, in amounts to be determined at trial;

    E.    Order Brookdale to make whole Ms. Adams by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and injury to reputation, in amounts to be determined at trial;

    F.    Order Brookdale to pay Ms. Adams punitive damages for its malicious or recklessly indifferent conduct, as described in the paragraphs above, in amounts to be determined at trial;

    G.    Grant such other and further relief as the Court deems just, necessary, and proper in the public interest; and

    H.    Award the Commission its costs of this action.

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED: September 24, 2014.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

GWENDOLYN REAMS
Associate General Counsel

EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
131 M Street N.E., 5TH Floor
Washington, D.C. 20507-0004

MARY JO O'NEILL
Regional Attorney
Phoenix District Office

STEVEN L. MURRAY
Supervisory Trial Attorney

/s/ D. Andrew Winston
Senior Trial Attorney
Telephone: 303.866.1361
E-Mail: andrew.winston@eeoc.gov

EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Denver Field Office
303 East 17th Avenue, Suite 410
Denver, Colorado 80203

**PLEASE NOTE:**

**For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys.  Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.**